

FILED
CLERK, U.S. DISTRICT COURT

SEP 10 2009

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Royal Bernard Wright, | CIV 06-00999- RT |
| Petitioner/Defendant, | 03-FO-0253399-0044-RT-02 |
| v. | ORDER DENYING (1) PETITION FOR WRIT OF HABEAS CORPUS |
| John Marshall, Warden, | PURSUANT TO 28 U.S.C. § 2254 AND (2) PETITIONER'S REQUEST |
| Respondent/Plaintiff | FOR AN EVIDENTIARY HEARING |

The court has read and considered petitioner Royal Bernard Wright's ("Wright") petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254"), ("Petition"), respondent Warden John Marshall's, ("Marshall") opposition, and Wright's reply ("traverse"). The court has also read and considered the transcripts of various proceedings in the underlying criminal action. Based on such consideration, the court will deny the petition for the reasons stated below.

1

2

# I.

## BACKGROUND[1]

3   On March 22, 2003, Wright was arrested for a second-degree robbery (Cal. Penal. Code §

4   211) and using a firearm in the commission of this robbery (Cal. Penal Code § 12022.53(b)).  A

5   preliminary hearing was held on June 16, 2003. Wright was represented by James Warden

6   ("Warden"), who had previously been appointed by the court.

7   At this hearing, both victims of the robbery testified.  Jacob Buckler testified that he and

8   his friend, Dallas Josephson, were walking in the vicinity of the Albertson's grocery store near

9   Manzanita Avenue and Winding Way in Sacramento County approximately after 9:00 p.m. on

10   March 22, 2003, when they were approached by Wright.  Wright asked them if he could have

11   some money because his car, a burgundy Acura parked in front of the three men, was out of gas.

12   Buckler decided he would give Wright money, approximately $15, as a gesture of

13   goodwill. Once Buckler took out his wallet, Wright pulled out a small handgun and told Buckler

14   to hand over all of his money.  Wright then took the contents of the wallet from Buckler (i.e., $38

15   and an ATM statement) and returned to the front passenger seat of the Acura.  Before the car

16   drove off, both Buckler and Josephson individually memorized the license plate number of the

17   car, according to their testimony at the hearing.  Josephson entered this number on his cell phone

18   when the car left.  Both victims gave this license plate number to the Sacramento County Sheriff's

19   Department ("Sheriff's Department").

20   Sheriff's Department Detective Danny Minter ("Minter") testified at the hearing that he

21   met other sheriff deputies at 10:30 p.m. on the night of the robbery at the location where deputies

22   had stopped a burgundy-colored Acura with the same license plate number as given by the

23   victims.  There were four people in the car, including Wright.  Minter searched the Acura and

24   located a dark-colored .25 caliber handgun under the front passenger seat.  Additionally, Minter

25   testified that he found a Bank of America ATM receipt in between the right front passenger seat

26

27   [1]   Most of this section is taken from the California Court of Appeal Opinion in case
No. C045537, dated January 31, 2005, as modified by an amended opinion on February 28, 2005,
28   supplemented by testimony at the June 16, 2003 preliminary hearing before the magistrate in state
court.

1   and the right front passenger door.  He also testified that both victims identified Wright at the

2   scene where the Acura was stopped as the man who pulled the gun on them and took Buckler's

3   money.

4        On August 14, 2003, Wright pled no contest to second degree robbery and admitted the

5   allegation of using a firearm in this offense under §12022.53(B).  The sentencing hearing was set

6   for October 3, 2003.  At the sentencing hearing, Warden informed the state trial court that Wright

7   wished to withdraw his plea of no contest and the admission of the truth of the use of the firearm

8   allegation ("motion to withdraw") on the basis of ineffective assistance of his counsel Warden,

9   partially due to counsel's alleged illness/unavailability.  Because it would be a conflict of interest

10  for Warden to represent Wright regarding the ineffective assistance of counsel allegation against

11  him, Warden requested that the court appoint another attorney to represent Wright for the purpose

12  of investigating the ineffective assistance of counsel claim as the basis of a motion to withdraw.

13  Additionally, Warden requested that the court appoint second counsel because of Wright's lack of

14  sophistication and education.

15       To determine whether it should appoint another attorney for Wright, the court held a

16  *Marsden*[2] hearing before sentencing Wright that day.  After the *Marsden* hearing, the court stated

17  that it was satisfied that Wright had effective assistance of counsel for his no contest plea and

18  admission and denied the request to appoint a substitute counsel.  Subsequently, the court also

19  denied Wright's motion to withdraw, finding that Wright failed to show good cause under

20  California Penal Code § 1018.

21       Wright appealed the state trial court's decision.  On appeal, Wright contended that (1) the

22  trial court abused its discretion by refusing to appoint substitute counsel to investigate whether

23

24       [2]   *People v. Marsden*, 2 Cal.3d 118 (1970), held that the trial court's failure to hear the
    defendant's specific reasons why his counsel was ineffective in an attempt to substitute counsel
25  was a denial of his 6th Amendment right.  In *People v. Smith*, the California Supreme Court
    explained that when a *Marsden* motion is made, the trial court must determine whether counsel has
26  been providing competent representation.  6 Cal.4th 684, 694-95 (1993).  "Appointment of counsel
    for the purpose of arguing that previous counsel was incompetent, without an adequate showing by
27  defendant, can have undesirable consequences."  *Id.* at 695  (holding that a trial court must use its
    discretion to determine if the "defendant has shown that a failure to replace the appointed counsel
28  would substantially impair the right to assistance of counsel").

1  Wright should move to withdraw his plea and admission based on the ineffectiveness of Warden
2  and (2) the court should correct the judgment and sentence to credit Wright with 12 additional
3  days of presentence custody.  The California Court of Appeal rejected Wright's first contention
4  and affirmed the judgment.  As to the second issue, the appellate court found that Wright was
5  entitled to 102 days of total presentence custody.  Wright petitioned the California Supreme
6  Court for review, which was denied.

7     Wright has filed the instant petition with this court claiming that the state court deprived
8  him of his due process rights under the Fourteenth Amendment by failing to grant his first
9  attorney's request on his behalf to appoint a second lawyer to investigate whether his first lawyer
10  ineffectively represented him and to file a motion to withdraw.  He claims that the appellate
11  court's affirmance of the trial court's denial of his request for substitution of counsel for the above
12  purposes was an objectively unreasonable application of clearly established federal law as
13  determined by the United States Supreme Court.  See 28 U.S.C. § 2254(d)(1).

14     The government opposes, contending that the state court did not unreasonably apply
15  clearly established federal law in denying Wright's request for substitution of attorney.  In his
16  traverse, Wright claims that the state court by not appointing substitute counsel at Wright's
17  request to represent him at the *Marsden* hearing erred insofar as it did not reasonably interpret and
18  apply U.S. Supreme Court precedent in deciding whether he was denied effective counsel at a
19  critical stage of the criminal proceeding under *Gideon v. Wainwright*, 372 U.S. 335 (1963).

20

21                                  **II.**

22                               **ANALYSIS**

23  **A. Legal Standard For a 28 U.S.C. § 2254 Petition**

24     Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner
25  for a federal habeas writ is entitled to relief only if the state court's adjudication of his claim:

26       (1) resulted in a decision that was contrary to, or involved an unreasonable application of,
27       clearly established Federal law, as determined by the Supreme Court of the United States;
         or

28

                                    4

1    (2) resulted in a decision that was based on an unreasonable determination of the facts in

2    light of the evidence presented in the State court proceeding.

3    28 U.S.C. § 2254(d).  Wright's contentions implicate the second prong of subsection (d)(1), i.e.,

4    the unreasonable application of clearly established federal law.  *See Weighall v. Middle,* 215 F.3d

5    1058, 1060-62 (9th Cir. 2000).  Under this second prong, "a federal court should grant the writ

6    when the state court's application of clearly established federal law is 'objectively unreasonable.'"

7    *Wildman v. Johnson,* 261 F.3d 832, 837 (9th Cir. 2001) (quoting *Williams v. Taylor,* 529 U.S.

8    362, 409 (2000)).  Pursuant to the unreasonable application clause, then, "a federal habeas court

9    may not issue the writ simply because that court concludes in its independent judgment that the

10   relevant state-court decision applied clearly established federal law erroneously or incorrectly."

11   *Williams,* 529 U.S. at 411 (O'connor J., concurring).  "Rather, that application must also be

12   unreasonable."  *Id.*

13       Additionally, under AEDPA, the court must look to direct precedent of the Supreme Court

14   of the United States, rather than precedent set by the controlling circuit.  *See Casey v. Moore,* 386

15   F.3d 896, 907 (9th Cir. 2004).  "Although lower federal court and state court precedent may be

16   relevant when that precedent illuminates the application of clearly established federal law as

17   determined by the United States Supreme Court, if it does not do so, it is of no moment."  *Id.*  The

18   statutory phrase "clearly established Federal law" refers to the "holdings, as opposed to the dicta,

19   of this Court's decisions as of the time of the relevant state-court decision."  *Williams,* 529 U.S.

20   at 412; *see also Carey v. Musladin,* 549 U.S. 70, 74 (2006) ("Therefore, federal habeas relief may

21   be granted here if the California Court of Appeal's decision was contrary to or involved an

22   unreasonable application of this Court's applicable holdings.").  "If this Court has not broken

23   sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts

24   cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar."

25   *Williams,* 529 U.S. at 381.  Thus, AEDPA limits the source of doctrine on which a federal court

26   may rely in addressing the application of a writ.  *Id.*  This limitation, however, does not prevent

27   the federal courts to use their independent interpretive authority.  *Id.* at 382.    "[R]ules of law

28

1  may be sufficiently clear for habeas purposes even when they are expressed in terms of a
2  generalized standard rather than a bright-line rule. *Id.*

3  Thus, although AEDPA precludes the Ninth Circuit from reversing a state court decision
4  because it conflicts with or is an objectively unreasonable application of Ninth Circuit precedent,
5  "Ninth Circuit precedent may be persuasive authority for purposes of determining whether a
6  particular state court decision is an unreasonable application of Supreme Court law, and may also
7  help us determine what law is clearly established." *Robinson v. Ignacio*, 360 F.3d 1044, 1057
8  (9th Cir. 2004) (internal quotations omitted). "Therefore, when faced with a novel situation we
9  may turn to our own precedent, as well as the decisions of other federal courts, in order to
10 determine whether the state decision violates the general principles enunciated by the Supreme
11 Court and is thus contrary to [or an unreasonable application of] clearly established federal law."
12 *Id.*

13 **B.      Discussion**

14           1.       Fourteenth Amendment Due Process Violation

15 Wright cites *Gideon* as the clearly established federal law that the state court unreasonably
16 applied. In *Gideon*, the Supreme Court held that the Sixth Amendment's guarantee of counsel is a
17 right fundamental and essential to a fair trial and, therefore, made obligatory to the states by the
18 Fourteenth Amendment. 372 U.S. at 337-45. Specifically, a trial is unfair if the accused is denied
19 effective assistance of counsel "at a critical stage of his trial." *United States v. Cronic*, 466 U.S.
20 648, 659 (1984) (analyzing when an indigent defendant is guaranteed counsel under the Sixth
21 Amendment). "[I]f counsel entirely fails to subject the prosecution's case to meaningful
22 adversarial testing, then there has been a denial of Sixth Amendment rights that makes the
23 adversary process itself presumptively unreliable." *Id.* Under these circumstances, no showing of
24 prejudice to the defendant is required.

25 The issue then is whether Wright's request to appoint a second counsel to investigate his
26 first appointed counsel for alleged ineffective assistance and to help him withdraw his plea and
27 admission is a critical stage of the criminal proceedings – even though the state trial court held a
28 *Marsden* hearing and found his present counsel was not ineffective. Wright has provided no

1   clearly established federal law addressing this particular circumstance. The government has cited
2   *United States v. Franklin*, 321 F.3d 1231, 1237-38 (9th Cir. 2003), for the proposition that district
3   courts have discretion to decide whether to deny a motion to substitute counsel. Arguably,
4   because a trial court has such discretion, Wright has failed to show a clearly established federal
5   law that he is entitled to substitution of counsel as a matter of right under these circumstances.
6   *See, e.g., Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006) (petitioner must show there is
7   clearly established federal law as determined by the Supreme Court to establish a basis for habeas
8   relief).

9       Further, the court considers the general principles set by *Gideon* and its progeny to
10   determine whether the state court unreasonably applied established federal law. While *Cronic*
11   does not define a critical stage, the Supreme Court later clarified that a critical stage denotes a
12   "step of the criminal proceeding, such as arraignment, that held *significant consequences* for the
13   accused." *Bell v. Cone*, 535 U.S. 685, 695-96 (2002) (emphasis added). The Ninth Circuit has
14   distilled a three-factor test for determining what constitutes a critical stage: (1) failure to pursue
15   strategies or remedies resulting in a loss of significant rights; (2) skilled counsel would be useful
16   in helping the accused understand legal confrontation; and (3) the proceeding tests the merits of
17   the accused's case. *Hovey v. Ayers*, 458 F.3d 892, 901 (9th Cir. 2006).

18       Here, the *Marsden* hearing did not involve a legal confrontation which required a skilled
19   attorney to help Wright understand complex legal problems (i.e, the second factor) nor did the
20   *Marsden* hearing test the merits of Wright's case (i.e., the third factor). *E.g., id.* at 902. Nor does
21   the first factor support finding that the *Marsden* hearing was a critical stage because it did not
22   result in a loss of significant rights: Wright was represented by a presumptively competent
23   counsel. While Wright may have disliked or disagreed with his counsel's services such as his
24   professional advice, the Supreme Court has held that there is no constitutional right to have a
25   "meaningful relationship" between an accused and his counsel. *E.g., Morris v. Slappy*, 461 U.S.
26   1, 13-14 (1983). Rather, the *Marsden* hearing focused on whether Wright's present counsel was
27   effectively representing him. Wright was present at the hearing and stated articulately and fully
28   his reasons why he felt his counsel was ineffective in response to questions by the state court

1  judge.  Likewise, Warden responded to the judge's questions.

2       Indeed, this court finds that the conduct of the *Marsden* hearing satisfies the "inquiry"
3  required for due process concerns when issues of conflict, incompetency or ineffective assistance
4  of counsel are raised, according to  general principles set forth by the Supreme Court.  *See, e.g.,*
5  *Wood v. Georgia*, 450 U.S. 261, 271-73 (1981) (finding that the possibility of a conflict of interest
6  triggers the court's duty to inquire to satisfy due process); *see also Cuyler v. Sullivan*, 446 U.S.
7  335, 346 (1980) (requiring a court to inquire about a defendant's representation if it knows or
8  reasonably should know that a particular conflict exists).  For example, in *Wood*, the Supreme
9  Court explained that "[w]here a constitutional right to counsel exists, our Sixth Amendment cases
10  hold that there is a correlative right to representation that is free from conflicts of interest." 450
11  U.S. at 271.  Thus, to resolve this issue, the *Wood* Court remanded this case to the lower court to
12  inquire or hold a hearing to determine whether an actual conflict existed when counsel represented
13  both the employer and employees and, consequently, may have violated their due process rights.
14  *Id.* at 272.

15       Ninth Circuit precedent incorporates this general principle.  *E.g., Schell v. Witek*, 218 F.3d
16  1017, 1025 (9th Cir. 2000) ("... it is well established and clear that the Sixth Amendment requires
17  on the record an appropriate inquiry into the grounds for such a motion [to substitute counsel],
18  and that the matter be resolved on the merits before the case goes forward.").  Recently, the Ninth
19  Circuit *en banc* found that if a trial court follows through with his or her duty to inquire about
20  problems with an accused's counsel when they are first raised and finds no basis for the accused's
21  problems with counsel, the accused is not entitled to a different lawyer. *Plumlee v. Masto*, 512
22  F.3d 1204, 1211 (9th Cir. 2008) (*en banc*).

23       Upon review of the record, the court finds that the state trial court conducted the type of
24  inquiry required by Supreme Court precedent, via a *Marsden* hearing, to determine whether
25  Wright could make a proper showing, or a colorable claim, that his present counsel was
26  ineffective.  In this hearing, Wright stated:

27       We never had really time to sit down and go over our case because he was having
28       problems with his father, and like he said, he had been sick and stuff like that.  And I was

8

1          just really I wanted to go over the case, actually sit down and list everything and look at
2          everything, and go over everything, and we never had a chance to do that because of his
3          personal problems.

4 After further inquiry, Wright said that he felt he had been "misrepresented" because he never had
5 time to look at anything.

6          The state trial court then asked Wright's counsel, Warden, how long he had represented
7 Wright. Warden answered that he had represented Wright at least since before the preliminary
8 hearing on June 16, 2003, and had only been sick for a week, the week before the October 3, 2003
9 sentencing. The Court then noted that Wright pled no contest on August 14, 2003, more than a
10 month before Warden's sickness. Accordingly, Warden's sickness did not affect his
11 representation of Wright before or during the change of plea proceedings.

12          The state trial court then inquired about whether Warden felt he did not have enough time
13 to inform Wright "about the plea and the consequences and any defenses that he had." Warden
14 answered that he talked a lot with Wright on the day of the plea and that he believed he "fulfilled
15 [his] obligation by telling [Wright] about the pros and cons of this case."

16          The state trial court found that Warden had represented Wright since March 2003,
17 approximately seven months before his *Marsden* hearing and five or so months before he pled no
18 contest and admitted the sentencing enhancement. During that time, Warden took Wright and an
19 investigator to the crime scene. They took photographs and went over the case including
20 statements by people. Warden explained at the *Marsden* hearing that he felt that Wright would
21 "get convicted in this matter." Warden further stated: that Wright "had two witnesses who
22 identified him with the gun. There's the gun in the car. And there's frankly not a lot – there's no
23 discretion on the use allegation for the court to strike it or dismiss it. So we discussed all of those
24 matters."

25          The judge also asked Wright about his lawyer's representation and Wright responded by
26 explaining that his lawyer made it sound "like [the plea] was a – would be a good thing to do."
27 But Wright also confirmed that he agreed to the advice that Warden gave him.

28          Ultimately, the judge denied Wright's motion for substitution of counsel, concluding that

1  Warden had effectively represented Wright. The trial court reasoned:   "A lot of people disagree
2  with their lawyer's advice, and a lot of times people are upset and emotional about what's gonna
3  happen cause it's a big decision in their lives.  But that's not in itself grounds to get rid of a
4  lawyer or to say that he was ineffective or that his representation fell below what you were entitled
5  to."  After the hearing, the state trial court stated on the record that he was "satisfied that Mr.
6  Wright has not been denied [sic] the ineffective assistance of counsel. I'm not gonna excuse Mr.
7  Warden from further representation." (Oct. 3, 2003 transcript of sentencing hearing, 40:9-11.)
8  The California Court of Appeal reviewed the *Marsden* hearing and found that it followed the
9  constitutional procedures under state law for a court to determine, in its discretion, whether
10  counsel was ineffective.

11  After reviewing the record and in light of the deference afforded by the second prong of §
12  2254(d)(1) to the state court's finding after conducting an adequate *Marsden* hearing, this court
13  finds that the state court's decision to deny Wright's motion – to appoint new counsel to
14  investigate Warden's ineffective assistance as a basis for Wright's anticipated motion to withdraw
15  and to represent him at a hearing on a motion to withdraw  – was not a significant consequence to
16  Wright or a critical stage of the criminal proceedings.  *See, e.g., Williams,* 529 U.S. at 383, 386
17  ("AEDPA plainly sought to ensure a level of 'deference to the determinations of state courts,'
18  provided those determinations did not conflict with federal law or apply federal law in an
19  unreasonable way.").  Thus, the California Court of Appeal's conclusion that the trial court's
20  exercise of discretion to deny Wright's request for appointment of new counsel for the purposes
21  stated above was an objectively reasonable application of established federal law and its decision
22  did not deprive Wright of his Sixth and Fourteenth Amendment rights of effective assistance of
23  counsel.  Accordingly, the court will deny Wright's petition.

24  2.   Section 2254 Evidentiary Hearing

25  "In deciding whether to grant an evidentiary hearing, a federal court must consider
26  whether such a hearing could enable an applicant to prove the petition's factual allegations,
27  which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan,* 550
28  U.S. 465, 474 (2007). "Because the deferential standards prescribed by § 2254 control whether

1   to grant habeas relief, a federal court must take into account those standards in deciding whether

2   an evidentiary hearing is appropriate." *Id.*  "It follows that if the record refutes the applicant's

3   factual allegations or otherwise precludes habeas relief, a district court is not required to hold an

4   evidentiary hearing." *Id.*; *see also Totten v. Merkle,* 137 F.3d 1172, 1176 (9th Cir. 1998) ("an

5   evidentiary hearing is *not* required on issues that can be resolved by reference to the state court

6   record.") (emphasis in original).  Here, as the above analysis shows, the state court record

7   precludes habeas relief pursuant to § 2254.  Accordingly, Wright's request for evidentiary hearing

8   will be denied.

9

10                                            **III.**

11                                     **DISPOSITION**

12

13          For the reasons above, IT IS ORDERED that:

14

15          (1) Petitioner Ronald Bernard Wright's request for an evidentiary hearing is denied, and

16

17          (2) Petitioner Ronald Bernard Wright's § 2254 petition for a writ of habeas corpus  is

18   denied.

19

20

21

22   *September 10, 2009*                    ROBERT J  TIMLIN

23   DATE                          ROBERT J. TIMLIN, DISTRICT COURT JUDGE

24

25

26

27

28